UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LOUISE OWENS,

Plaintiff,

DECISION AND ORDER
08-CV-6588 CJS

-v-

ASPEN FUNDING LLC, GREENPOINT
MORTGAGE FUNDING LLC, GMAC,
GMAC MORTGAGE INVESTMENTS,
GMAC MORTGAGE LLC, and JOHN DOE,

Defendants.

---

APPEARANCES

For Plaintiff:

Jane Marie Gabriele, Esq.
Bryan D. Hetherington, Esq.
Rebecca Case-Grammatico, Esq.
Alexander Karsten, Esq.
Empire Justice Center
One West Main Street, Suite 200
Rochester, New York 14614

For Greenpoint Mortgage
Funding LLC:

Gail M. Eckstein, Esq.
Harry H. Rimm, Esq.
Reed Smith LLP
599 Lexington Avenue, 29th Fl.
New York, New York 10022

For GMAC, Aurora Bank,
FSB, and Mortgage
Electronic Servicing:

Kenneth J. Flickinger, Esq.
Melanie Finkel, Esq.
Knuckles Komosinski & Elliot, LLP
565 Taxter Road, Suite 590
Elmsford, New York 10523

INTRODUCTION

This is an action in which Plaintiff alleges, *inter alia*, that she was defrauded into taking out mortgage loans that she could not afford.   Now before the Court are two motions to dismiss the Second Amended Complaint (Docket Nos. [#20][#22]), by GMAC Mortgage Investments and GMAC Mortgage LLC ("GMAC") and Greenpoint Mortgage Funding LLC ("Greenpoint"), respectively, and Plaintiff's cross-motion [#28] for leave to file a Third Amended Complaint.   For the reasons that follow, GMAC's motion is granted, and Greenpoint's motion and Plaintiff's cross-motion are both granted in part and denied in part,

BACKGROUND

Unless otherwise noted, the following facts are taken from the Second Amended Complaint [#17-1].  At all relevant times, Louise Owens ("Plaintiff") was an elderly widow living in Rochester, New York.[1] Second Amended Complaint [#17-1] at ¶ 5.  At all relevant times, Aspen Funding LLC ("Aspen")[2] was a mortgage broker with an office in Brooklyn, New York, and Greenpoint was a California mortgage lender doing business in New York State. *Id*. at ¶ ¶ 6, 8.   GMAC is the mortgage loan servicer for the subject loans.[3]

At all relevant times, the fair market value of Plaintiff's home was, according to her, $176,000.00., and she had a fixed monthly income of $1,680.00 Second Amended Complaint [#17-1] at ¶ ¶ 16, 57.   Prior to November 2005, Plaintiff had an existing mortgage loan in the

---

[1]The Second Amended Complaint and proposed Third Amended Complaint indicate that Plaintiff is "an eighty-one year old African American widow," although the relevance of Plaintiff's race is unclear.

[2]No one has appeared or answered the Complaint on behalf of Aspen, which filed a certificate of dissolution in August 2008. *Id*. at ¶ 6.

[3]The Second Amended Complaint lists "John Doe" as the current owner of the subject mortgages, which were assigned by Greenpoint. *Id*. at ¶ 107.  As discussed further below, Plaintiff now indicates that the POARM is owned by Aurora Bank, FSB.

principal amount of $134,500.00, with a fixed 6.6% interest rate. *Id*. at ¶ 13.   In November

2005, Plaintiff's husband died. *Id*. at ¶ 14.   That same month, Plaintiff began receiving

telephone solicitations from Aspen, urging her to refinance, in order to lower her monthly

payments. *Id*. More specifically, Alex Tokarev ("Tokarev"), an Aspen employee, told Plaintiff

that her interest rate would be 1% for the first "4-5 years," after which the rate would "reset"

to 6%, and that the loan would "lower her total monthly payment by approximately $400." *Id*.

at ¶ 17.

Based on Tokarev's representations, Plaintiff decided to apply for a loan.  On or about

December 6, 2005, Plaintiff received a loan application from Aspen. *Id*. at ¶ 22.  The loan

application was generic, and did not identify a particular lender. *Id*.  Plaintiff completed the

application and returned it to Aspen.  In response, Aspen sent Plaintiff closing documents for

two different loans from Greenpoint: a first mortgage; and a second mortgage to cover

closing costs. *Id*. at ¶ 23.  Tokarev told Plaintiff that the closing would occur on January 4,

2006, in Rochester, and that an attorney from the Brooklyn law firm of Almonte and

Bratkovsky would travel to Rochester to represent her at the closing. *Id*. at ¶¶ 25-26, 29.

Prior to January 4, 2006, Plaintiff had no communications about the mortgage loans with

anyone except Aspen employees. *Id*. at ¶ 28.   More specifically, Plaintiff had no

communication with Greenpoint.

On January 4, 2006, the scheduled closing date, Tokarev telephoned Plaintiff and told

her that no attorney would be visiting her, because the attorney had car trouble on his way

to Rochester. *Id*. at ¶ 31.  Instead, Tokarev told Plaintiff that she could speak by telephone

with an "attorney" at Almonte & Bratkovsky, who, as it turned out, was a paralegal named

Tania Lerner ("Lerner"). *Id*. at ¶ 32.  According to Plaintiff, Lerner did not explain the terms

of the loans to her, nor did she review the various disclosure statements with her. *Id*. at ¶ ¶ 35-38.   The loan documents contained terms that were different than those described by Tokarev. *Id*. at ¶ 24.   Plaintiff nevertheless signed the documents and returned them to Almonte & Bratkovsky by mail. *Id*. at ¶ 39.   Someone later notarized Plaintiff's signatures on the documents, falsely indicating that they had witnessed her sign them. *Id*.   Additionally, although Plaintiff maintains that she never received any notices of her right to cancel the loans, someone forged her signature on such notices, indicating that she had been advised of her right to cancel. *Id*. at ¶ ¶ 90, 92.

Plaintiff executed two mortgage loans.   The first was a Payment Option Adjustable Rate Mortgage ("POARM"), and the second was a home equity line of credit ("HELOC").   The POARM loan was in the amount of $176,000.00, for a term of thirty years. *Id*. at ¶ 54.   As mentioned above, Plaintiff maintains that $176,000.00 was the full fair-market value of her home. *Id*. at ¶ 57.   The POARM had an initial interest rate of 2%, which stayed in place only one month, after which the rate fluctuated between 7% and 12%. *Id*. at ¶ 59.   Notably, the POARM's promissory note, which was prominently entitled "*Adjustable* Rate Note" (emphasis added), stated that the interest rate was subject to change on a monthly basis, but would not exceed 12%. *See, e.g.*, Adjustable Rate Note, ¶ 2 ("I will pay interest at a yearly rate of 2.00 %.  The interest rate I will pay may change. . . .   The interest rate I will pay may change on the first day of March, 2006, and on that day every month thereafter. . . .   My interest rate will never be greater than 12.00 %.").   Apart from the interest rate, the note also provided that Plaintiff's monthly payment amount was subject to change. *See, id*. at ¶ 3 ("Each of my initial monthly payments will be in the amount of U.S. $650.54.   This amount may change. . . .   My monthly payment may change as required by Section 3(D) below beginning on the 1st day of

March, 2007, and on that day every 12th month thereafter."). The note had an "Adjustable Rate Rider," which reiterated the provisions discussed above. Additionally, the note explained that each month, the lender would calculate two payment amounts: The "Full Payment," which would reflect the actual payment of principal and interest necessary to amortize the loan; and the "Limited Payment," which would be less than the actual principal and interest owed. *Id*. at ¶ 3(D). The note explained that Plaintiff could choose to pay either amount. *Id*. Further, the note explained that the unpaid interest portion of any monthly payment would be added to the unpaid principal. *Id*. at ¶ 3(E). Plaintiff chose the Limited Payment option each month, which was the only one she could afford. Second Amended Complaint at ¶ ¶ 69-70. As mentioned above, under that option, the unpaid portion of the interest was added onto the original principal, "creating a negatively amortizing loan." *Id*. at ¶ 54(d), 70-71.

The POARM further required that, after five years, the payment amount would be adjusted upward to reflect the actual amount necessary to fully amortize the loan over its remaining term. *Id*. at 54(g) ("On March 1, 2011 and on each succeeding 5[th] Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again."). However, the payment could also increase sooner if the unpaid principal and interest reached 110% of the original loan amount. *Id*. at ¶ 3(f); *see also*, Second Amended Complaint at ¶ 75. Because Plaintiff chose the minimum payment option, she maintains that it was foreseeable that unpaid principal and interest would quickly exceed 110% of the original POARM loan, at which time her monthly payment would increase beyond her ability to pay. *Id*. at ¶ ¶ 70-77.

In addition to the POARM, Plaintiff executed the HELOC, in the amount of $22,000.00, purportedly to cover closing expenses.   The "initial advance" under the HELOC was $22,000.00, which was the full line of credit amount.   Consequently, the total of the POARM and HELOC was $198,000.00, which was $24,000.00 more than the assessed  value of Plaintiff's home. *Id*. at ¶ 96.   The monthly HELOC payment was $191.67 per month, on top of the POARM payment, and that amount was required to increase to $328.13 per month after five years. *Id*. at ¶ 87.[4]  Plaintiff maintains that she was never able to afford these loans, and that as of May 2009, the unpaid balance of the two loans had increased to $213,008.00. *Id*. at ¶ 97.

Plaintiff indicates that Aspen told her that she would receive $37,468.35 in cash at closing. *Id*. at ¶ 101.  Moreover, the HUD-1 statement indicates "cash to borrower" in that same amount.   However, at closing, Plaintiff actually received only $17,496.35. *Id*. at ¶ 101. Aspen reportedly also told Plaintiff that a portion of the loan proceeds would be used to pay her real property taxes.  However, the taxes were never paid.  Additionally, Plaintiff contends that at closing she was charged excessive and/or unwarranted fees. *Id*. at ¶ 118. Furthermore, at closing Greenpoint paid Aspen a "yield spread premium" ("YSP") of $880.00, which, Plaintiff maintains, was intended to reward Aspen for steering her into a high-cost, unaffordable mortgage. *Id*. at ¶ 104.

After closing, the subject loans were serviced by GMAC.  On or about December 12, 2008, Plaintiff sent a notice to GMAC, purporting to exercise her right to rescind the loans. On or about January 5, 2009, GMAC advised Plaintiff that she could not rescind the loans.

---

[4]The HELOC was also an adjustable-rate loan, with a maximum interest rate of 18%. HELOC ¶ 7.

On December 30, 2008, Plaintiff commenced this action.   The Second Amended Complaint purports to state  seven causes of action, consisting of a federal cause of action and six claims under New York State law, which are as follows:

1. A claim that Aspen, Greenpoint, and GMAC violated the Federal Truth In Lending Act ("TILA") by failing to provide Plaintiff with  notices of her right to rescind the loans, and by failing to provide her with accurate financial disclosures as required by 15 U.S.C. § 1605 and 12 C.F.R. § 226.4.  *Id*. ¶ ¶ 116-119;

2. A claim that Aspen and Greenpoint violated New York State Banking Law § 6-l, by causing her to enter into a "high rate mortgage loan" on her residence in which the total points and fees exceeded five percent of the total loan amount;

3. A claim that Aspen and Greenpoint violated New York General Business Law ("GBL") § 349 by engaging in deceptive practices.  In that regard, Plaintiff alleges that Aspen "routinely carried out practices with respect to consumer-oriented transactions," and that Greenpoint routinely accepted referrals from Aspen. Second Amended Complaint [#17-1] at  ¶  108.   Plaintiff further maintains that the "loan closing documents" were misleading, in that they did "not accurately and simply disclose the terms of the mortgage, including the interest rate and payment amounts." *Id*. at ¶ 128;

4. A claim that Aspen and Greenpoint fraudulently induced Plaintiff to execute the mortgage loans, by misrepresenting the terms of the loans. *Id*. at ¶ 141. As mentioned above, Plaintiff maintains that prior to closing, Aspen made a number of false statements.   Additionally, she contends that Aspen and Greenpoint made misrepresentations about the following: the amount of her monthly payments; the reasonableness of closing fees; the value of her home; the notarization of her signatures; and, the affordability of the loans.  On this point, Plaintiff does not allege that Greenpoint made any express misrepresentations, but instead, she contends that Greenpoint's mortgage documents were misleading. *Id*.;

5. A claim that Aspen and Greenpoint conspired to defraud Plaintiff.  For example, Plaintiff maintains that Greenpoint "knew or should have known the fraudulent manner in which defendant Aspen conducted its business," and

nevertheless made loans to someone referred by Aspen. *Id*. at ¶ 146. Plaintiff further states that Greenpoint should have known that Plaintiff could not afford the loans, "based on the information she supplied, and on the facial inconsistencies of the documents." *Id*.;

6. A claim that Aspen, Greenpoint, and GMAC violated New York General Obligations Law § 5-501, by causing Plaintiff to enter into a residential mortgage agreement in which the interest rate exceeded sixteen percent per annum. *Id*. at ¶ ¶ 150-153; and

7. A claim that Aspen and Greenpoint comitted the tort of conversion, by improperly taking part of the loan proceeds. Specifically, Plaintiff contends that Defendants subtracted $4,123.21 from the loans for property taxes, which they did not pay, and paid her $19,972.00 less in cash at closing than was indicated on the closing statement. *Id*. at ¶ ¶ 154-157.

In support of these claims, Plaintiff maintains, *inter alia*, that she was never provided with notices informing her of her right to cancel the loans, though someone forged her signature on documents indicating that she had been provided them. She further alleges that the loan documents contain various inaccuracies. More specifically, she contends that the Uniform Residential Loan Application that she signed at closing contained erroneous information.[5] For example, the application stated that her monthly income was $6,097.00, when it actually was $1,680.00. *Id*. at ¶ 93. The application also listed the home's appraised value as $220,000.00, while the full-value tax assessment was $174,000.00. *Id*. at ¶ ¶ 64, 94. Further, the application indicated that Plaintiff had rented the home, when she actually owned it, and that she had "employment income," even though she was retired. *Id*. at ¶ 64.

---

[5]Plaintiff maintains that Aspen is responsible for the incorrect information on the loan application, and that it misrepresented her financial condition to Greenpoint. See, Second Amended Complaint ¶ 137 ("By falsifying Mrs. Owens's income on the final Residential Loan Application Aspen further misrepresented an essential term of the application to Greenpoint."); *see also, id*. at ¶ ¶ 93-94 (alleging that Aspen falsified information on the loan application concerning Plaintiff's income and the value of her home.)

On July 13, 2009, GMAC filed the subject  motion [#20] to dismiss the Second Amended Complaint for failure to state a claim.  GMAC contends, in that regard, that the complaint mistakenly indicates that GMAC is an assignee of the subject loans, when in fact GMAC is merely the servicer of the loan.  GMAC maintains that it was retained to service the loans in May 2006, and that it did not participate in the application or origination of the loans. Instead, GMAC states that the current assignee of the loans is Aurora Bank, FSB ("Aurora"). Consequently, GMAC maintains that it is not a proper or necessary party to this action.  In response, Plaintiff agrees that GMAC is not the assignee of the loans, and she cross-moves [#28] to amend her complaint, to substitute Aurora and Mortgage Electronic Registration System ("MERS") for the "John Doe" defendant named in the Second Amended Complaint.[6]

 Moreover, Plaintiff now agrees that GMAC cannot be liable under any of her causes of action.  However, Plaintiff maintains that GMAC should remain in this action, as a necessary party, under FRCP 19.  *See*, Pl. Memo of Law [#29] at 6.  GMAC , though, denies that it is a necessary party to this action, since it does not "claim an interest relating to the subject of the action." GMAC Memo of Law [#40] at 3-4.  GMAC essentially states that it merely services Aurora's loans, and that it will therefore have to comply with whatever rulings are made in this case concerning Aurora.  *Id*. at 4.  Aurora also opposes the cross-motion to amend, and contends that it cannot be found liable under TILA. *Id*. at 4-6.  On this point, Aurora argues that an assignee of a mortgage can only be liable under TILA if the alleged TILA violation is apparent on the face of the disclosure statement, which is not the case here. *Id*. at 5 (citing

---

[6]The proposed Third Amended Complaint purports to assert the following claims against the following parties: 1) TILA claim against Aspen, Greepoint, and Aurora; 2) a claim under New York Banking Law § 6-l against Aspen and Greenpoint; 3) a claim under New York GBL § 349 against Aspen and Greenpoint; 4) a claim for fraud against Aspen and Greenpoint; 5) a claim for conspiracy to commit fraud against Aspen and Greenpoint; and 6) a claim for conversion against Aspen and Greenpoint.  The proposed Third Amended Complaint does not contain a claim under New York General Obligations Law.

15 U.S.C. § 1641(a)).  In this regard, Aurora maintains that the proposed Third Amended Complaint does not plausibly state that the alleged TILA violations were apparent on the face of the disclosure statements.

On July 13, 2009, Greenpoint filed its motion [#22] to dismiss the Second Amended Complaint.  Greenpoint contends that the sole federal claim, the TILA claim, is time-barred, because Plaintiff did not exercise her right to rescind the loan within three days after the closing, and because Plaintiff did not commence this action within one year after the closing. In support of its position, Greenpoint cites 15 U.S.C. § 1635(a), 15 U.S.C. § 1640(e), and 12 C.F.R. § 226.23(a)(1), (a)(3) n. 48, & (b)(1), as establishing the relevant statute of limitations. Additionally, Greenpoint contends that because the TILA claim must be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims, pursuant to 28 U.S.C. § 1367(c)(3).  Alternatively, Greenpoint maintains that each of the state-law claims must be dismissed for failure to state a claim.  More specifically, Greenpoint states that the claim under New York Banking Law § 6-l should be dismissed, since the loan points and fees  did not exceed five percent of the total loan.  As for the claim under GBL  § 349, Greenpoint contends that the claim must be dismissed, because Plaintiff fails to allege that Greenpoint engaged in any deceptive or misleading act, or that Greenpoint directed any such act toward consumers generally.  With regard to the fraud claim, Greenpoint states that Plaintiff has not pleaded the allegedly fraudulent statements with particularity.  In that regard, Greenpoint states that although Plaintiff attributes the statements generally to "Aspen and Greenpoint," she admits that she had no communication with Greenpoint prior to the closing. As for the claim for  civil conspiracy to commit fraud, Greenpoint argues that the claim is based on sheer conjecture.  Greenpoint further contends that Plaintiff's claim under New York General Obligations Law § 5-501 is preempted by a federal statute, 12, U.S.C. § 1735f-

7a(a)(1).  Additionally, Greenpoint states that Plaintiff has not pleaded a claim for conversion against it, and that the only allegations of conversion pertain to Aspen.  Finally, Greenpoint contends that Plaintiff's cross-motion to amend should be denied as futile, since Plaintiff has already had three opportunities to state a claim.

Plaintiff opposes Greenpoint's motion to dismiss as to all claims, except for the General Obligations Law claim, which she has now withdrawn.  As for the TILA claim, Plaintiff contends that because she was not given the required notification of her right to cancel the loans, the relevant statute of limitations is three years from the closing date, and that the claim is therefore timely.  Plaintiff also contends that she states a claim under  Banking Law § 6-l, because "points and fees" exceeded 5% of the loan.  In that regard, Plaintiff states that in making its motion to dismiss that claim, Greenpoint failed to include certain unreasonable charges, such as the property tax payment ($3,227.50) and the loan proceeds ($19, 972.00) that were allegedly converted, when calculating the 5% threshold.  Further, Plaintiff contends that she has stated a claim under GBL   § 349, since she had plausibly alleged that Greenpoint engaged in deceptive acts.  On this point, Plaintiff contends that she is not relying on oral representations made by Aspen, but is relying on Greenpoint's own closing documents.  For example, Plaintiff alleges that Greenpoint's loan and mortgage documents used "convoluted" and misleading language, which made it appear that the entire first year's interest rate was only 2%, when actually the 2% interest rate only applied for one month, and which hid the fact that the loan was negatively amortizing.  Plaintiff further alleges that Greenpoint's deceptive conduct affects consumers at large, since Greenpoint has a "routine practice of originating unaffordable mortgages with no regard to the borrower's ability to repay, whose terms mask their true cost, and with a payment option designed to give the borrower the false impression that by making an on time monthly payment they can remain

current on their mortgage." Pl. Memo in Opposition [#32] at 15.  Plaintiff further indicates that she has pleaded a claim for fraud against Greenpoint, because Greenpoint's loan documents contained false and misleading representations regarding the loans, upon which Plaintiff relied.  *See*, Plaintiff's Memo in Opposition [#32] at 17.  For example, Plaintiff states that the loan and mortgage documents themselves are unintelligible and hide the true terms of the loans, and that the loan application and disclosure statements contain false information.  In addition, Plaintiff maintains that she has pleaded a claim for conspiracy to commit fraud, since she contends that Aspen and Greenpoint acted in concert to carry out the predatory practices alleged above.  In that regard, Plaintiff states that the "close correlation" between Aspen's oral misrepresentations and Greenpoint's documents creates an inference of a "corrupt relationship" between Aspen and Greenpoint. *Id*. at 22.  Finally, Plaintiff contends that she has pleaded a claim for conversion against Greenpoint, since Greenpoint retained loan proceeds which were supposed to be paid to tax authorities and to Plaintiff.

On July 22, 2010, counsel for the parties appeared before the undersigned for oral argument of the motions.

## DISCUSSION

Now before the Court are motions to dismiss, for failure to state a claim, and a cross-motion to amend.  Because they are intertwined, the Court will first consider GMAC's motion to dismiss, and Plaintiff's cross-motion to amend, which Aurora opposes.  Then, the Court will consider Greenpoint's motion to dismiss.

### *GMAC's Motion to Dismiss and Plaintiff's Cross-Motion to Amend*

Courts must freely give leave to amend pleadings "when justice so requires." FRCP 15(a)(2).  Nevertheless, a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*,

568 F.3d 329, 334 (2d Cir.2009) (internal quotation marks omitted).  "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin v. Dickson*, No. 03-7917, 100 Fed.Appx. 14, 16, 2004 WL 1205185 at *2 (2d Cir. Jun. 2, 2004) (unpublished).  In ruling upon a motion to dismiss under FRCP 12(b)(6), the Court must construe

> the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level.

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) (citations and internal quotation marks omitted).  In that regard, a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction," as well as "a short and plain statement of the claim, showing that the pleader is entitled to relief." FRCP 8(a).

In this case, it is clear, at the outset, that GMAC's motion to dismiss must be granted to the extent that it seeks dismissal of Plaintiff's substantive causes of action.  As previously indicated, Plaintiff now agrees that GMAC has no liability under those claims.  The only issue remaining as to GMAC's motion is whether GMAC should remain in the action as a necessary party.  On this point, the relevant legal principles are set forth in FRCP 19(a)(1), which  states:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FRCP 19(a)(1). The Court is not aware of any binding precedent on this point concerning a mortgage loan servicer. However, there are a number of district court decisions addressing this issue, most of which are from the Seventh Circuit. Those courts have gone both ways on the issue, although the majority have held that loan servicers are necessary parties. *See, In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, 2008 WL 5100909 at * 4 (N.D.Ill. Dec. 2, 2008) ("Courts within our district have disagreed on the issue of whether a servicer is a necessary party in similar cases, and the Seventh Circuit has yet to resolve this question. In the majority of instances, district courts have held that a servicer is a necessary party in a TILA action because the servicer could report damaging information to credit bureaus or attempt to foreclose on the loan the plaintiff is attempting to rescind.") (footnote omitted); *Haymer v. Countrywide Bank, FSB*, No. 10 C 5910, 2011 WL 3205365 at *3 (N.D.Ill. Jul. 28, 2011) ("Here, BAC services the loan Haymer is attempting to rescind by collecting payments and late fees and by making credit reports. This right to payment is an interest in the subject of this action. In addition, if the loan is ultimately rescinded, BAC's interest will cease. Therefore, it is premature at this juncture to conclude that BAC is not a necessary party to the action."); *but see, Bills v. BNC Mortg., Inc.*, 502 F.Supp.2d 773, 775 (N.D.Ill. 2007) (Noting disagreement among courts on this point, and dismissing loan servicer from TILA action, since any concern about possible actions by servicer, such as improperly reporting to credit bureaus, was speculative) (*citing Walker v. Gateway Financial Corp.*, 286 F.Supp.2d 965, 969 (N.D.Ill. 2003)).

In the instant case, however, Plaintiff has not articulated any good reason why, as a practical matter, GMAC should remain in the case, nor does she cite any legal authority, apart from FRCP 19.   Instead, Plaintiff makes only the following conclusory argument: "Defendant GMAC, as servicer of Mrs. Owens's' mortgages, should be maintained solely as a party necessary for relief; as full relief cannot be obtained in its absence." Pl. Memo of Law [#29] at 6.  Plaintiff does not explain why full relief could not be granted in GMAC's absence. Plaintiff has therefore not shown that GMAC is a necessary party, and  GMAC's motion to dismiss is granted in its entirety.

The Court must now consider Plaintiff's cross-motion to amend, to add Aurora and MERS as defendants.  In that regard, the proposed Third Amended Complaint  alleges that Aurora and MERS are both necessary parties, pursuant to FRCP 19. *Id*. at ¶¶ 11-12.  The proposed Third Amended Complaint also purports to add a substantive cause of action against Aurora, under TILA.  As to that claim, the proposed complaint contains the following two factual averments:

> 117. As a result of the subject transaction, on May 1st , 2006 defendant Aurora Bank FSB acquired an interest in plaintiff's primary dwelling that secures payment or performance of an obligation. 15 U.S.C. § 1641(e).  Accordingly, defendant is subject to the Truth in Lending Act ("TILA").
>
> ***
>
> 121. As assignee of the loan Aurora Bank FSB is liable for all of the above claims that Mrs. Owens asserts against defendants Aspen and Greenpoint pursuant to 15 U.S.C. § 1641(d).

Proposed Third Amended Complaint, ¶¶ 117, 121.  However, as Plaintiff's counsel admitted during oral argument, an assignee may be liable under TILA only if the alleged TILA violation is apparent on the face of the disclosure statement.  On this point, 15 U.S.C. § 1641(a) states, in pertinent part:

[A]ny civil action for violation of this subchapter . . . which may be brought against a creditor may be maintained against any *assignee* of such creditor *only if the violation of which such action or proceeding is brought is apparent on the face of the disclosure statement*[.]  For the purpose of this section, a violation *apparent on the face of the disclosure statement* includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

(b) Proof of compliance with statutory provisions

Except as provided in section 1635(c) of this title, in any action or proceeding by or against any subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgment of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of the delivery thereof and, except as provided in subsection (a) of this section, of compliance with this part.

(emphasis added).[7]

Here, the proposed amended pleading does not plausibly state a claim against Aurora under this section. *See*, Proposed Third Amended Complaint ¶¶ 85-87, 91, 93, 118-119.  For example, while Plaintiff alleges that Aspen and Greenpoint should have given different disclosures in connection with the HELOC, since it was really a closed-ended loan, she admits that the loan appeared to be open-ended on its face. *Id*. at 85-86.[8]  Therefore, the allegedly improper HELOC disclosure would not have been apparent to Aurora from the face

---

[7]*See also*, 15 U.S.C. § 1641(e)(2) ("For the purpose of this section, a violation is apparent on the face of the disclosure statement if – (A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or (B) the disclosure statement does not use the terms or format required to be used by this subchapter.")

[8]Plaintiff alleges that Aspen and Greenpoint used the HELOC, which was ostensibly an "open-ended loan," but was actually a closed-ended loan, to hide the true cost of the POARM, and failed to give proper disclosures. *Id*. at ¶¶ 85-86.  However, Plaintiff admits that, the POARM and HELOC appeared to be a closed-ended loan and an open-ended loan, respectively, "on their face[s]." *Id*. at ¶ 85.

of the documents.   Additionally, although Plaintiff alleges that she was never given the notices informing her of her right to cancel the loan, Aurora would not have known that fact, since someone apparently forged her signature, indicating that she had received the notices. *Id*. at ¶ ¶ 91, 93.  Accordingly, the alleged TILA violations are not apparent on the face of the pertinent disclosure documents.

For these reasons, Plaintiff's cross-motion to amend is futile, and is denied,  to the extent that it seeks to add a TILA claim against Aurora.  However, the Court will grant the cross-motion to amend in part, to the extent that it seeks to add Aurora as a necessary party under Rule 19, since Aurora is the current owner of the POARM, which Plaintiff is attempting to rescind.  The  cross-motion to amend is denied to the extent that it seeks to add MERS as a necessary party.  In that regard, the Proposed Third Amended Complaint does not plausibly plead a basis for treating MERS as a necessary party under Rule 19, since it does not appear that MERS has any real interest in the subject mortgage loans. *See*, Proposed Third Amended Complaint ¶ ¶ 11, 56-57,108.

### Greenpoint's Motion to Dismiss

Greenpoint has moved to dismiss all seven causes of action in the Second Amended Complaint.   However, Plaintiff has now abandoned the sixth cause of action, brought pursuant to New York General Obligations Law § 5-501.   The sixth cause of action is therefore dismissed at the outset.

### TILA

Turning to Plaintiff's first cause of action, the parties disagree concerning the applicable statute of limitations.  It is clear that the statute of limitations depends on whether a plaintiff is seeking rescission or damages.  TILA provides borrowers with a right of

rescission, and states, in pertinent part, that when a borrower gives a security interest in his

or her  principal dwelling,

> the obligor shall have the right to rescind the transaction until midnight of the
> third business day following the consummation of the transaction or the
> delivery of the information and rescission forms required under this chapter
> together with a statement containing the material disclosures required under
> this subchapter, whichever is later, by notifying the creditor . . . of his intention
> to do so.

15 U.S.C. § 1635(a).  A borrower's written acknowledgment of having received the required

rescission notice "does no more than create a rebuttable presumption of delivery thereof." 15

U.S.C. § 1635(c).  Moreover, where the borrower seeks rescission of the loan based on a TILA

violation, the statute of limitations is three years. 15 U.S.C. § 1635(f); *see also*, 12 C.F.R. §

226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to

rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest

in the property, or upon sale of the property, whichever occurs first.").  On the other hand, TILA

provides a separate right to sue for damages, and such claims have a one-year statute of

limitations. 15 U.S.C. § 1640(e); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 118 S.Ct. 1408,

1409-1410 (1998) (differentiating between right to rescission and right to sue for damages).

Here, Plaintiff seeks both rescission and damages.

Applying the foregoing principles of law, Plaintiff's claim for rescission is timely, and

her claim for damages is not.[9]  The subject loan transaction occurred on January 4, 2006, the

closing date.  Plaintiff did not commence this action until December 30, 2008, almost three

years later.  Consequently, any claim for actual or statutory damages under TILA is time-

barred.  Plaintiff's claim for rescission, however,  would only be time-barred if she had

received the required notices, which she denies.  Plaintiff maintains that she never received

---

[9]In her Memo of Law [#32] in opposition to Greenpoint's motion, Plaintiff limits her discussion to the
claim for rescission, and does not address the claim for damages.

the form notifying her of her right to rescind, and that the signature on the acknowledgment form was forged. See, Second Amended Complaint ¶ 90 ("Mrs. Owens was never provided a Notice of the Right to Cancel as required by law."); *id*. at ¶ 92 ("The loan documents . . . appear to bear a forged signature on the notarized acknowledgment of the required Notice of Right to Cancel."); *see also, id*. at ¶ 118.[10]  Since the Court must accept Plaintiff's factual allegations for purposes of this motion, the motion to dismiss the TILA rescission claim as time-barred must be denied.[11]

### *New York Banking Law § 6-l*

Greenpoint next contends that Plaintiff cannot maintain a claim under Banking Law § 6-1(g), since the total points and fees did not exceed 5% of the loan amount.  Section 6-l of New York Banking Law, entitled "High-cost home loans," imposes certain restrictions on high-cost home loans.  Plaintiff contends that her first mortgage qualifies as a high-cost loan under Banking Law § 6-l(g)(ii), since "[t]he total points and fees exceed: five percent of the total loan amount if the total loan amount is fifty thousand dollars or more[.]" In that regard,

(f) "Points and fees" means:

(i) All items listed in 15 U.S.C. § 1605(a)(1) through (4), except interest or the time-price differential;[12]

---

[10]Defendants contend that Plaintiff's statement on this point is equivocal, and is not sufficient to defeat their motion to dismiss.  The Court disagrees.  In the first place, the Court has examined the signatures on the mortgage, which Plaintiff admittedly signed, as well as the signatures on the notices, and they do not appear to be the same.  More importantly, Plaintiff states that she was never provided with the notices, and as her attorney remarked during oral argument, if she did not have them, she could not have signed them. Accordingly, for purposes of the instant Decision and Order, the Court accepts Plaintiff's factual assertion that she was never provided with the documents notifying her about her right to cancel the loans.

[11]Greenpoint argued that because the TILA claim was time-barred, the Court should decline to exercise supplemental jurisdiction over the remaining state-law claims.  However, because the Court finds that the TILA rescission claim is timely, it will exercise supplemental jurisdiction over the state-law claims.

[12]The items listed under 15 U.S.C. § 1605(a)(1)-(4) are the following: "(1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.  (2) Service or carrying charge. (3) Loan fee, finder's fee, or similar charge.  (4) Fee for an investigation or credit

(continued...)

(ii) All charges for items listed under § 226.4(c)(7) of title 12 of the code of federal regulations, as amended from time to time, but only if the lender receives direct or indirect compensation in connection with the charge or the charge is paid to an affiliate of the lender; otherwise, the charges are not included within the meaning of the phrase "points and fees";[13]

(iii) All compensation paid directly or indirectly to a mortgage broker, including a broker that originates a loan in its own name in a table-funded transaction, not otherwise included in subparagraphs (i) and (ii) of this paragraph;
(iv) The cost of all premiums financed by the lender, directly or indirectly, for any credit life, credit disability, credit unemployment, or credit property insurance, or any other life or health insurance, or any payments financed by the lender directly or indirectly for any debt cancellation or suspension agreement or contract, except that insurance premiums calculated and paid on a monthly basis shall not be considered financed by the lender.

Banking Law § 6-l(f).

In this case, the parties disagree as to which charges should be included in calculating "points and fees."   Greenpoint maintains that the total points and fees are $7,330.28. However, Plaintiff contends that in addition to those costs, the calculation must include additional fees, taxes that were collected but not paid, and amounts that were wrongfully withheld from her, the total of which she calculates as being at least $23,760.50. *See*, Pl. Memo of Law [#32] at 8-9.   Although Greenpoint argues that such additional fees and charges should not be included in the calculation, the Court finds that Plaintiff has plausibly pleaded that they may fit within the broad definition of "points and fees" set forth above. Accordingly, Greenpoint's motion to dismiss the second cause of action is denied.

*New York GBL § 349*

---

[13]The items listed under 12 CFR § 226.4(c)(7) are as follows: "(i) Fees for title examination, abstract of title, title insurance, property survey, and similar purposes. (ii) Fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents. (iii) Notary and credit-report fees. (iv) Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest-infestation or flood-hazard determinations. (v) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge."

The principles applicable to claims under GBL § 349 are well settled:

A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.  Whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably.  A deceptive practice, however, need not reach the level of common-law fraud to be actionable under section 349.  In addition, a plaintiff must prove "actual" injury to recover under the statute, though not necessarily pecuniary harm.

Further, as we have repeatedly stated, reliance is not an element of a section 349 claim.  The plaintiff, however, must show that the defendant's "material deceptive act" caused the injury.

*Stutman v. Chemical Bank*,  95 N.Y.2d 24, 29, 731 N.E.2d 608, 611-612, 709 N.Y.S.2d 892, 895 - 896 (2000) (citations and internal quotation marks omitted).

Here, Plaintiff contends, *inter alia*, that Greenpoint's mortgage documents were misleading concerning the mortgages's "interest rate[s] and payment amounts." Second Amended Complaint at ¶ 128.  She further maintains that Greenpoint's mortgages contained language that was difficult to understand, and that Greenpoint knew or should have known that she could not afford the loans.  However, Plaintiff's allegations on these points do not state a plausible Section 349 claim against Greenpoint.  *See, id*. at ¶ ¶  127-140.  Most mortgages are written in legal terms that might be confusing to a layperson, which is why many mortgagors retain an attorney when taking out a mortgage loan.  While Plaintiff may have been misled *by Aspen* concerning the availability of an attorney to represent her, she nevertheless proceeded to execute the closing documents without an attorney.[14]  The subject promissory notes and mortgages, although complicated, accurately reflect the terms of the adjustable-rate arrangements to which Plaintiff agreed.  Although those terms are different

---

[14]Plaintiff indicates that she understood that the person to whom she was speaking by telephone was a paralegal, and that such person did not explain the mortgage documents to her. *See*, Second Amended Complaint at ¶ ¶ 33-38.

21

than what Aspen promised to Plaintiff, such fact does not make Greenpoint's documents

misleading.  Moreover, the documents explain that the loan will be negatively-amortizing if

the borrower chooses to make limited payments, as Plaintiff did.  Such  negatively-amortizing

loans are not illegal.  Moreover, while Plaintiff contends that Greenpoint should have known

that she could not afford the loans, such contention is not plausible.  In that regard, Plaintiff

admits that Aspen submitted a loan application to Greenpoint  which overstated her income

and the value of her home. *See, id*. at ¶ ¶ 93-94.  Essentially, the pleading indicates that

Aspen misled Greenpoint into making a loan to an unqualified borrower, by overstating her

income and the value of the security. *See, id*. at ¶ 137.[15]   Therefore, Plaintiff's suggestion

that Greenpoint knew her actual financial situation is not supported by plausible factual

allegations.  Finally, Plaintiff states that Greenpoint's payment of a YSP to Aspen is indicative

of an intent to mislead her.   However, the YSP was plainly disclosed on the HUD-1

statement,[16] and payment of such a fee is not illegal. Consequently, Greenpoint's payment

of a YSP to Aspen does not establish a claim under Section 349. *See, Shovak v. Long Island*

*Commercial Bank*, 50 A.D.3d 1118, 1120, 858 N.Y.S.2d 660, 662 - 663 (2d Dept. 2008)

("[T]here was no materially misleading statement, as the record indicated that the YSP, which

is not per se illegal, was fully disclosed to the plaintiff. Accordingly, the defendant was entitled

to dismissal of the cause of action alleging a violation of General Business Law § 349(a).")

(citation omitted); *see also, Wint v. ABN Amro Mortg. Group, Inc.*, 19 A.D.3d 588, 589-590,

800 N.Y.S.2d 411, 412-413 (2d Dept. 2005) (Mortgage broker did not make any material

---

[15]In opposition to Greenpoint's motion, Plaintiff now suggests that Greenpoint wasn't concerned that it was making an under-secured loan to an unqualified borrower, because it intended to sell the mortgage on the "secondary market." *See*, Memo of Law [#32] at 18-19.  Such speculation is not sufficient to defeat a 12(b)(6) motion.

[16]*See*, HUD-1 Statement, line 813 (Docket No. [#23-5] at 14).

misrepresentation or omission concerning YSP, where it disclosed the fact to the borrower);

*Lum v. New Century Mortg. Corp.*, 19 A.D.3d 558, 800 N.Y.S.2d 408, 410-411 (2d Dept.

2005) (Affirming dismissal of claims for fraud and violation of Section 349 where YSP was

disclosed to borrower).

<u>Fraud and Conspiracy to Commit Fraud</u>

Next, Greenpoint moves to dismiss Plaintiff's claims for fraud and conspiracy to

commit fraud.  In that regard,

> [i]n New York state, to prove a fraud claim, a plaintiff must prove 'a
> misrepresentation or a material omission of fact which was false and known to
> be false by defendant, made for the purpose of inducing the other party to rely
> upon it, justifiable reliance of the other party on the misrepresentation or
> material omission, and injury.[17]  Once fraud is established, the conspiracy must
> be proven, requiring (i) an agreement between the conspirator and the
> wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy.

*Gabriel Capital, L.P. v. NatWest Finance, Inc.*, 94 F.Supp.2d 491, 500 (S.D.N.Y. 2000)

(citations and internal quotation marks omitted).  For the same reasons already discussed

above, the Court agrees with Greenpoint that Plaintiff has not pleaded a plausible fraud claim

against Greenpoint.[18] *See, e.g., Fisher v. Equicredit*, 19 A.D.3d 541, 800 N.Y.S.2d 407, 408

(2d Dept. 2005) (Affirming dismissal of fraud claim involving payment of a YSP, where such

payment was disclosed to the borrower).  As discussed above, Plaintiff has not pleaded that

Greenpoint's mortgage documents are fraudulent.  Moreover, while Plaintiff may have

---

[17]*See also, Dooner v. Keefe, Bruyette & Woods, Inc.*, 157 F.Supp.2d 265, 277 (S.D.N.Y. 2001) (
"Under New York law, a claim for fraud based on false statements must allege the following elements: (1) a
material false representation of an existing fact; (2) made with knowledge of its falsity; (3) with an intent to
defraud; (4) reasonable reliance; (5) and damages.").

[18]In opposition to Greenpoint's motion, Plaintiff states that the factual allegations supporting her fraud
claims against Greenpoint are set forth in the Second Amended Complaint, paragraphs 17, 26-34, 41-44, 53,
58, 91-94. See, Pl. Memo of Law [#32] at 16.  However, most of those paragraphs pertain to Aspen and Steve
Vasco, a non-party, not Greenpoint.  Moreover, paragraph 58, which does pertain to Greenpoint, does not
allege fraudulent conduct. Greenpoint never advised Plaintiff that she could afford the loans, and she was
obviously in a better position than Greenpoint to know her income and the value of her home.

pleaded plausible fraud claims against Aspen,[19] she has not plausibly pleaded that there was a conspiracy between Aspen and Greenpoint to defraud her.[20]  Plaintiff's allegations of such a conspiracy are entirely conclusory. *See*, Second Amended Complaint ¶ ¶ 108, 144-147. For example, Plaintiff states: "Defendants Aspen and Greenpoint intentionally, knowingly and willfully participated in a scheme by committing overt acts and making misrepresentations and/or failing to provide material information to fraudulently induce Mrs. Owens to enter into the subject mortgage transaction, as recited in paragraph 141." Second Amended Complaint at ¶ 144.[21]  Plaintiff has not pleaded sufficient facts to make this bald assertion plausible. Accordingly, Plaintiffs claims for fraud and civil conspiracy to commit fraud against Greenpoint are dismissed.

*Conversion*

Under New York law, "a conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Abacus Federal Savings Bank v. Lim*, 75 A.D.3d 472, 473, 905 N.Y.S.2d  585, 587 (1st Dept. 2010) (citation and internal quotation omitted).  In this case, Plaintiff alleges that, at closing, Greenpoint withheld money from the

---

[19]Plaintiff attempts to lump Greenpoint and Aspen together.  For example, in her Memo of Law, she describes paragraph 101 of her Second Amended Complaint as pleading that "Greenpoint[ ] promise[d]" to "return $37,468.35 to her." Memo of Law [#32] at 17.  However, that paragraph of the Second Amended Complaint actually refers to *Aspen's* alleged promise to give Plaintiff that sum of money.  The Second Amended Complaint does not plead a fraud claim against Greenpoint concerning that money.

[20]To the contrary, as already mentioned earlier, Plaintiff's factual allegations indicate that Aspen misled both her and Greenpoint.  Although Plaintiff contends that Greenpoint should have ferreted out the inconsistencies in the loan application which Aspen prepared (see, Memo of Law [#32] at 19), Greenpoint's failure to do so does not establish fraud against Plaintiff.

[21]Plaintiff makes a similar conclusory, naked assertion of a conspiracy in her Memo of Law [#32] at p. 21 ("Neither Defendant Greenpoint nor Aspen acted alone in making this loan. [sic]  They acted in concert with an explicit or implicit understanding of their roles in furtherance of their predatory practices.  Defendant Greenpoint's role as lender established an overt act, and that they intended to participate in furtherance of the plan.").

loan proceeds to pay property taxes, but never paid the taxes.  Plaintiff also alleges that Greenpoint withheld $19,972.00 that she was supposed to receive in cash at closing.  The Court finds that such allegations are sufficient to state a claim for conversion against Greenpoint.

### Plaintiff's Request to Replead

Plaintiff concludes her opposition to Greenpoint's motion with a general request for leave to replead her claims against Greenpoint, in the event that the Court grants the 12(b)(6) motion. Pl. Memo of Law at 24-25 ("Should the Court find any of the Claims for relief to have not be[en] pleaded with required specificity plaintiff respectfully requests that the Court grant leave to amend as appropriate.").[22]  Therefore, the issue is whether Plaintiff should be permitted to replead the claims for violation of General Business Law § 349, fraud, and civil conspiracy to commit fraud, which the Court is dismissing.[23]  The request is denied.  Plaintiff has already made four attempts to plead these claims.  For the reasons discussed above, the Court believes that any further attempts to assert these claims against Greenpoint would be futile. Accordingly,  Plaintiff's application to replead the dismissed claims against Greenpoint is denied. *See, Goodrich v. Long Island Rail. R. Co.*, — F.3d —, 2011WL 3559997 at *9  (2d Cir. Aug. 15, 2011) ("[A] request to replead should be denied in the event that repleading would be futile.") (citation omitted); *see also, Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.").

---

[22]Additionally, she indicates that after discovery, she may wish to further amend her Complaint to add a new party, because she still does not know the current owner of the HELOC.  As for any request to amend to add the current owner of the HELOC as a party to this action, the Court will address it when and if it occurs.

[23]As discussed above, the claim for damages under TILA is time-barred, and Plaintiff does not request permission to replead that claim.  Moreover, Plaintiff voluntarily withdrew her claim under New York General Obligations Law § 5-501.

CONCLUSION

GMAC's motion [#20] to dismiss is granted, and the Clerk of the Court is directed to terminate GMAC as a party to this action.  Plaintiff's cross-motion to amend [#28] is granted in part and denied in part as follows:  The application is granted to the extent that it adds Aurora as a necessary party, but is denied to the extent that it seeks to assert any substantive claim against Aurora; the cross-motion is also denied insofar as it seeks to add GMAC and MERS as  necessary parties.  With this understanding, the Third Amended Complaint is now the operative pleading in this action.  Greenpoint's motion [#22] to dismiss is granted as to the following claims:  1) the claim for damages under TILA; 2) the claim under New York General Obligations Law § 5-501; 3) the claim under New York General Business Law § 349; 4) the claim for fraud; and 5) the claim for civil conspiracy to commit fraud.  Greenpoint's motion to dismiss is denied as to the following claims: 1) the TILA rescission claim; 2) the claim under New York Banking Law § 6-1; and 3) the claim for conversion of loan proceeds.  Plaintiff's request to replead the dismissed claims against Greenpoint is denied.

SO ORDERED.

Dated:  September 9, 2011
        Rochester, New York

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge